**Opinion issued December 20, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00039-CR

————————————

**LUIS ALONZO ZAMBRANO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1279002**

---

## MEMORANDUM OPINION

A jury convicted Luis Alonzo Zambrano of aggravated robbery, and the trial

court sentenced him to forty years' confinement. *See* TEX. PENAL CODE ANN. §

29.03 (West 2011). Zambrano presents two issues on appeal: (1) the evidence was

legally insufficient to show that he committed the offense of aggravated robbery and (2) the trial court erred by failing to suppress evidence obtained pursuant to an unlawful arrest. We affirm the trial court's judgment.

## Background

A grand jury indicted Zambrano for the offense of aggravated robbery, alleging that Zambrano, "while in the course of committing theft of property owned by ISAIAH BALDERAS, and with intent to obtain and maintain control of the property, INTENTIONALLY AND KNOWINGLY cause[d] bodily injury to ISAIAH BALDERAS, and . . . did then and there use and exhibit a deadly weapon, namely a knife." To secure Zambrano's conviction, the State presented the testimony of two witnesses: the complainant, Balderas, and the arresting officer, C. Nguyen of the Houston Police Department.

Balderas testified that he used a city bus to travel to and from evening classes at the University of Houston Downtown. One night around 10:30 p.m., Balderas got off the bus a couple of blocks from his apartment. As he walked home from the bus stop, Balderas was approached by a man wielding a knife. The man instructed Balderas to hand over his wallet. The wallet was not easily accessible because it was located in a backpack Balderas was wearing on his shoulders. As Balderas struggled to remove the backpack and retrieve his wallet, the man became upset and attempted to stab Balderas in the chest. Balderas blocked the knife with

2

his arm and suffered a deep cut. The man then knocked Balderas's glasses askew and ran toward a nearby apartment complex. Balderas, still in possession of his wallet, walked home and called for police and medical assistance.

Officer Nguyen responded. Balderas described his assailant to Nguyen: a "tall skinny Hispanic" male having a "circular" tattoo under his eye and wearing dark clothing and a black hat embellished with the logo of a Houston athletic team and a red brim. During a search of the surrounding area, Nguyen came across Zambrano and another man walking near the apartment complex where the robbery suspect had fled. Nguyen noticed that Zambrano's dark clothing and black and red hat matched Balderas's description of the assailant, and Nguyen instructed the men to come closer to his patrol car. When he saw the spiral tattoo under Zambrano's eye, Nguyen handcuffed Zambrano. According to Nyugen, the handcuffs were necessary because Nguyen was outnumbered by Zambrano and his companion and Nguyen feared Zambrano had a weapon.

As Officer Nguyen began to search Zambrano for weapons, Balderas passed by the scene en route to an area hospital and stopped to identify Zambrano. Zambrano, still handcuffed, ran from Nguyen. Zambrano's companion also fled. A foot chase ensued, but Nguyen caught Zambrano when he tripped on a curb. Zambrano disclosed to Nguyen that he had an open knife in his pocket. Nguyen recovered the knife, which he described for the jury as being approximately three

3

and one half inches in length; in his arrest report, Nguyen described the knife as a switchblade having a two and one half inch blade but totaling six and one half inches in length.[1] Nguyen did not see any blood on the knife or on Zambrano's clothing. Nguyen then placed Zambrano in the patrol car. Once Zambrano was secured, Balderas positively identified him at the scene as the assailant. Balderas also identified Zambrano in court.

Both the knife recovered by Officer Nguyen and Balderas's at-the-scene identification of Zambrano were the subject of pretrial evidentiary disputes. Zambrano argued that Nguyen's investigation exceeded the limits of a temporary detention and amounted to an arrest when Nguyen handcuffed Zambrano. Arguing further that the arrest was made without a warrant or probable cause and therefore was unlawful, Zambrano moved to suppress the evidence. The trial court denied Zambrano's motion, and the complained-of evidence was admitted at trial.

After the close of the evidence, the jury convicted Zambrano of aggravated robbery, and the trial court sentenced him to forty years in prison. Zambrano appeals from the conviction.

---

[1]    Balderas later received pain medication and stitches for the injury he sustained to his arm. Although both Balderas and Officer Nguyen described the knife used in the attack as a pocketknife, Balderas's hospital records identified the "mechanism of [Balderas's] injury" as a "steak knife with a 6-inch blade."

**Sufficiency of the Evidence**

In his first issue, Zambrano argues that the evidence of his identity as the person who committed the aggravated robbery was legally insufficient because (1) Balderas's identification was not credible, (2) there was conflicting evidence regarding whether the knife used during the aggravated robbery and the knife recovered from Zambrano were the same size, (3) Officer Nguyen did not conduct any forensic testing of Zambrano's knife or his clothing, and (4) Officer Nguyen did not prepare a photo spread or lineup for Balderas's review.

## A. Standard of Review

When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Our review includes both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Although we consider all evidence presented at trial, we do not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

## B.    Identity Evidence

As is relevant to Zambrano's legal sufficiency challenge, the State had the burden to prove that Zambrano, in the course of committing theft and with the intent to obtain or maintain control of property, intentionally or knowingly caused bodily injury to Balderas and used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02(a)(1), 29.03(a)(2) (West 2011). Zambrano does not argue that the State failed to prove an aggravated robbery occurred. Instead, Zambrano contends there is legally insufficient evidence identifying him as the person who committed the aggravated robbery. The identity of the person committing the offense is an element of the crime that must be proved. *See Greene v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding that identity is element of offense and may be proven by direct or circumstantial evidence). Courts have found sight identification alone to be legally sufficient to establish identity. *See Johnson v. State*, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding eyewitness identification was factually sufficient to support conviction when complainant saw appellant only on night that

6

he robbed her, but complainant testified she recognized appellant by his face and eyes); *Walker v. State*, 180 S.W.3d 829, 832−33 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding identification by only one eyewitness was legally sufficient to support conviction when appellant robbed complainant at gunpoint and robbery lasted less than one minute).

Here, Balderas twice identified Zambrano as the individual who robbed him at knife-point: first, at the scene of Zambrano's arrest not long after the robbery occurred and second, during trial. Zambrano complains that Balderas's identification was not credible because (1) the lighting in the area where the robbery occurred was dim; (2) Balderas had never seen Zambrano before the robbery; and (3) Balderas only gave a general description of the assailant, which description did not include the faint goatee Officer Nguyen described Zambrano as having. However, Balderas testified that he was "as positive as [he had] ever been in his life" that Zambrano was the person who committed the robbery. Balderas explained that the overhead lighting where the robbery occurred enabled him to clearly see Zambrano's face, including a uniquely identifying physical characteristic—a circular tattoo under Zambrano's eye. Zambrano was in the area where the robbery occurred not long after Balderas reported the incident to police. At the time he was detained by Officer Nguyen, Zambrano was dressed in the manner described by Balderas—dark clothing and a black hat embellished with a

Houston athletic team's logo and a red bill. A knife generally matching the one described by Balderas at trial was found on Zambrano's person.

Because the jury, as the sole judge of the weight to be given the conflicting evidence regarding the size of the knife used during the robbery, was free to disregard the hospital records indicating that the "mechanism of [Balderas's] injury" was a "steak knife with a 6-inch blade," this Court is required to resolve any inconsistencies in favor of the verdict. *See Wesbrook*, 29 S.W.3d at 111. Balderas's testimony alone, as the testimony of an eyewitness to the robbery, was sufficient to support Zambrano's conviction. *See Johnson*, 176 S.W.3d at 78 (observing that testimony of single eyewitness can be factually sufficient to support a felony conviction). Based on Balderas's testimony, a rational jury could have concluded that Zambrano was the robber. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. The lack of additional identification or forensic evidence does not render the evidence of Zambrano's guilt legally insufficient. *See Johnson*, 176 S.W.3d at 77−78 (holding that lack of forensic evidence will not overturn guilty verdict based on insufficiency of evidence where other evidence connects defendant to crime). We therefore hold that the evidence is legally sufficient to support the jury's verdict, and we overrule Zambrano's first issue.

**Motion to Suppress**

In his second issue, Zambrano argues that the trial court erred by denying his motion to suppress evidence—the knife recovered from his pocket and Balderas's at-the-scene identification—because the evidence was the product of an unlawful arrest. Zambrano contends that Officer Nguyen's investigative detention evolved into an unlawful arrest because no reasonable person would have believed that he was free to leave after being handcuffed.

## A. Standard of Review

In reviewing the trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We review the evidence in the light most favorable to the trial court's ruling and give "almost total deference" to the trial court's determinations of historical facts and rulings on mixed questions of law and fact that depend on an evaluation of credibility and demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Carmouche*, 10 S.W.3d at 327. But we apply a de novo standard of review to the application of search and seizure law and to mixed questions of law and fact that do not depend on credibility and demeanor. *Gonzales*, 369 S.W.3d at 854; *Carmouche*, 10 S.W.3d at 327.

**B.      Restraint during Investigative Detention**

A law enforcement officer may conduct a brief investigative detention, or "*Terry* stop," when he has a reasonable suspicion that an individual is involved in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); *Carmouche*, 10 S.W.3d at 327−28. Here, Zambrano does not dispute that Officer Nguyen could reasonably suspect that Zambrano had robbed Balderas. The robbery had occurred less than an hour before Nguyen encountered Zambrano, who matched the description of the assailant. Zambrano was dressed in dark clothing, wore a black and red hat, and had a circular tattoo under his eye. Rather, Zambrano's argument is that because Nguyen placed him in handcuffs at that time, he was under arrest.

Zambrano is correct that he was not free to leave once he was placed in handcuffs; however, it was not because he was under arrest—it was because he was temporarily detained while Nguyen conducted his investigation. That is precisely what *Terry* permits—a temporary detention, in which the suspect is not free to leave, while the police officer investigates whether a crime has been committed. *See* 392 U.S at 30–31, 88 S. Ct. at 1884−85. The use of handcuffs does not automatically convert a temporary detention into an arrest. *See Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (holding that police officers who temporarily handcuffed and detained suspect in their patrol car had not

"arrested" him for purposes of the Fourth Amendment and stating, "There is no bright-line test providing that mere handcuffing is always the equivalent of an arrest. Instead, when evaluating whether an investigative detention is unreasonable, 'common sense and ordinary human experience must govern over rigid criteria.'") (citation omitted) (quoting *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997)); *Rhodes*, 945 S.W.2d at 117−18 (holding that officer handcuffed defendant "primarily out of concern for his safety, based on the circumstances: it was dark; the area was a high-crime location; the officers had just concluded a car chase which was initiated due to commission of a traffic violation and during which a bag was dropped from the car; and, his partner was chasing the driver, leaving [the officer] alone with the suspect"; and that handcuffing was reasonable under the circumstances and did not constitute an arrest); *Mays v. State*, 726 S.W.2d 937, 943–44 (Tex. Crim. App. 1986) (holding that officer's conduct in handcuffing two men was not an arrest and was reasonable under circumstances as temporary investigative detention: lone police officer arrived at scene of possible burglary and saw two men in front of door; officer told men that he would have to frisk them; he did so; and then handcuffed them for his own protection, "[d]ue to the nature of the call and the way they were acting scared like maybe they had been caught at something, and I was all alone, and two of them, and they [were] both bigger than I was."). An officer may handcuff a suspect during an investigative detention if it is

11

reasonably necessary to continue the investigation, maintain the status quo, or ensure the officer's safety. *See Rhodes*, 945 S.W.2d at 117.

Officer Nguyen testified that he handcuffed Zambrano because he feared for his safety. Nguyen's safety concerns were reasonable under the circumstances: it was late at night; Zambrano matched the description of the assailant; Nguyen believed Zambrano might be in possession of a knife, which he had already used to injure Balderas; and Nguyen was alone and outnumbered by Zambrano and his companion. By handcuffing Zambrano, Nguyen did only that which was reasonably necessary to ensure his own safety while investigating Zambrano's possible involvement in the aggravated robbery. *See Ballentine*, 71 S.W.3d at 771; *see also Turner v. State*, 252 S.W.3d 571, 580 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding that suspect was not in custody when officer handcuffed him for officer safety while transporting him to police station).

We therefore conclude that Nguyen's investigative detention in this case did not evolve into an arrest when he handcuffed Zambrano, and the trial court did not abuse its discretion in denying Zambrano's motion to suppress evidence obtained as a result of the detention and search. Zambrano's second issue is overruled.

## Concluding

Having overruled both of Zambrano's issues on appeal, we affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).